# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ALLCHIN and DAVID FOSTER, individuals, on behalf of all others similarly situated,<br><br>                                          Plaintiffs,<br><br>v.<br><br>VOLUME SERVICES, INC. dba CENTERPLATE and DOES 1-100, inclusive,<br><br>                                          Defendants. | Case No.:  3:16-cv-00488-H-KSC<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>[Doc. No. 48] |

On March 16, 2015, Plaintiffs Mark Allchin and David Foster ("Plaintiffs") filed a putative class action in the County of Sacramento Superior Court of California against Defendant Volume Services, Inc. ("Defendant").  (Doc. No. 1-3.)  On April 24, 2015, the suit was removed to the Federal District Court for the Eastern District of California.  (Doc. No. 1.)  Plaintiffs filed the operative First Amended Complaint ("FAC") on May 22, 2015.  (Doc. No. 7.)  The FAC alleged that Defendant violated various California employment laws when it failed to properly compensate employees for their overtime work.  (See id.)  On February 24, 2016, the case was transferred to the Federal District Court for the Southern District of California.  (Doc. No. 22.)  On March 13, 2013, Plaintiffs filed a motion for class certification.  (Doc. No. 48.)  At the parties' request, the

Court continued the hearing on Plaintiffs' motion until July 31, 2017. (Doc. Nos. 52, 56.) Defendant filed an opposition to Plaintiffs' motion for class certification on July 17, 2017. (Doc. No. 58.) Plaintiffs filed a reply on July 24, 2017. (Doc. No. 59.)

## BACKGROUND

Defendant is a hospitality service company providing concessions to various venues across the United States and Canada. (Doc. No. 58-1 at 2, ¶ 2.) Defendant provides concessions at seven locations in California, including stadiums, golf courses, convention centers, and a zoo. (Id. ¶¶ 3, 10.) Defendant employs non-exempt employees in nearly 80 different positions. (Id. ¶ 8.) Some of these positions are eligible to receive service charges as part of their compensation. (Id. ¶ 12.)

Plaintiffs are employees of Defendant. Mark Allchin has been employed by Defendant since 1993 and has worked exclusively at the San Diego Convention Center and Qualcomm Stadium. (Id. ¶ 14.) David Foster has been employed by Defendant since 2011 and also worked exclusively at the San Diego Convention Center and Qualcomm Stadium. (Id. ¶ 18.)

Plaintiffs allege that Defendant has failed to properly compensate employees for their overtime and improperly provided employees with inaccurate paystubs. (See Doc. No. 7 ¶¶ 39, 59.) Plaintiffs filed this case as a purported class action and now seek to certify three classes, including one subclass.

## DISCUSSION

### I. LEGAL STANDARD

In order to maintain a class action, Plaintiffs bears the burden of showing they have satisfied the prerequisites of Federal Rule of Civil Procedure 23(a), as well as one of the prongs of Rule 23(b). Fed. R. Civ. P. 23; Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188 (9th Cir. 2001). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous

parties, common questions of law or fact, etc." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 351 (2011) (emphasis in original).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" <u>Dukes</u>, 564 U.S. at 348 (quoting <u>Califano v. Yamasaki</u>,442 U.S. 682, 700-01 (1979)). As such, district courts must conduct a "rigorous analysis" to ensure each of the Rule 23 prerequisites have been met. <u>Zinser</u>, 253 F.3d at 1186. Determining whether the Rule 23 prerequisites have been met may require some analysis of the underlying claims. <u>Dukes</u>, 564 U.S. at 351 ("class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). However, district courts should limit any analysis of the merits to that necessary for assessing the Rule 23 requirements. <u>Id.</u>; <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 981 (9th Cir. 2011). If the court is not fully satisfied that the requirements of Rule 23 have been met, certification should be denied. <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982).

## A. Rule 23(a) Prerequisites

The party seeking certification bears the burden of showing they satisfy each of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. <u>Zinser</u>, 253 F.3d at 1186.

Numerosity requires "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This "requires examination of the specific facts of each case and imposes no absolute limitations." <u>Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Commission</u>, 446 U.S 318, 330 (1980). "The central question is whether Plaintiffs have sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak." <u>Schwartz v. Upper Deck Co.</u>, 183 F.R.D. 672, 680-81 (S.D. Cal. 1999).

Commonality is established where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiffs must show, however, that the class members 'have suffered the same injury.'" Dukes, 564 U.S. at 350 (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)). This means that class members' claims must depend upon a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Typicality requires that "the claims or defense of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts, Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Finally, the adequacy requirement is met by showing "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

**B. Rule 23(b)(3)**

As Plaintiffs seek to certify their classes pursuant to Rule 23(b)(3), they must also show "that the questions of law or fact common to class member predominate over any questions affecting only individuals members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These two requirements are referred to as "predominance" and "superiority" and are intended to allow class certification in cases where "a class action would achieve

4

economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other desired results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23). "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013), and tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 594 (1997).

In assessing predominance and superiority, Rule 23(b) provides a non-exclusive list of factors for courts to consider, including:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

## II.  THE PURPORTED CLASSES

Plaintiffs seek to certify four discrete classes. (Doc. No. 48 at 2-3.) The first class (hereinafter the "Overtime Class") includes "all current and former non-exempt employees of Defendant within the State of California who . . . were compensated, at least in part, by service charge distributions and who worked overtime hours." (Id. at 2.) The second class (the "Late Pay Subclass") is a subclass of the Overtime Class and includes any member of the Overtime Class who also "did not receive all their full overtime wages upon termination or resignation." (Id.) The third class (the "Inaccurate Pay Statement Class") includes "all current and former non-exempt employees of Defendants within the State of California who . . . were not provided with an accurate,

itemized pay statement reflecting (1) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked by the employee at each hourly rate, or (2) reflecting the name and address of the legal entity that is the employer." Finally, the fourth class (the "UCL Class") is a derivative class, consisting of all members of the other classes.

The alleged injury to the Overtime Class and the Late Pay Subclass stems from the claim that Defendant improperly calculated the amount of overtime pay for employees receiving service charge distributions. Plaintiffs argue that Defendant failed to include service charges in the calculation of employees' regular pay rates for purposes of determining the proper overtime rate. (See Doc. No. 48-1 at 19.) Thus, as a result of this miscalculation, neither class received their entire compensation.

The alleged injury to the Inaccurate Pay Statement Class stems from misstatements in employee's pay statements. Plaintiffs argue that employees' pay statements violated the California Labor Code because they did not, for example, include all hourly rates or the name and address of the employer.

## III. __ANALYSIS__

Plaintiffs bear the burden of "affirmatively demonstrat[ing]" they have satisfied all of the prerequisites of a class action. Dukes, 564 U.S. at 351. Here, Plaintiffs have not done so. The record before the court is limited to facts concerning the named plaintiffs, and offers almost no details as to other class members. For example, Plaintiffs have produced their personal paystubs with alleged miscalculations and misstatements but have offered no paystubs from other class members or—even though named plaintiffs only worked at two of the seven California locations. Similarly, Plaintiffs have failed to address differences between named plaintiffs' employment and that of other class members such as differences in unionization and the impact of collective bargaining agreements. With no evidence regarding other class members, the Court is unable to assess similarities and differences between named plaintiffs and the classes they seek to represent. As such, the Court cannot find that Rule 23's prerequisites are met and must,

thus, deny certification.  See Falcon, 457 U.S. at 161 (requiring a "rigorous analysis"). Furthermore, because the discovery deadline has already passed, the Court denies certification with prejudice.

## A. Overtime Class and Late Pay Subclass

Plaintiffs' proposed Overtime Class includes "all current and former non-exempt employees of Defendant within the State of California who . . . were compensated, at least in part, by service charge distributions and who worked overtime hours."  (Doc. No. 48 at 2.)  Plaintiffs allege this class shares a common injury stemming from Defendant's failure to properly calculate the amount of class members' overtime pay by not including class members' compensation from service charges in the calculation of their overtime rate.  Evidence of this common injury, however, is lacking.  As a result, the Court finds the Plaintiffs have not affirmatively demonstrated the presence of commonality, typicality, or predominance and denies certification of the Overtime Class and its subclass.

### 1. Commonality

To demonstrate commonality, Plaintiffs must show that class members have suffered the same injury.  Dukes, 564 U.S. at 349-50.  "This does not mean merely that they have all suffered a violation of the same provision of law" but, rather, that the way in which their rights were violated is common to class members.  Id.  "Their claim must depend on a common contention . . . that is capable of classwide resolution."  Id.  Here, Plaintiffs have not demonstrated that class members' injuries stem from Defendant's conduct that was common to class members.

///
///
///
///
///
///

7

To show that class members sustained a common injury, Plaintiffs have produced a limited number of their personal paystubs. (Doc. No. 48-3, Exhibits 5-11.) These include six paystubs for Mark Allchin ("Allchin") and one paystub for David Foster ("Foster"). Of these seven paystubs, only two actually include overtime pay—both belonging to Allchin.[1]

Plaintiffs fail to explain how Allchin's paystubs demonstrate a miscalculation of his overtime pay, much less a miscalculation common to the entire class. First, only two of Allchin's seven paystubs actually include overtime compensation. (See Doc. No. 48-3 at 69, 73.) The first paycheck, dated September 21, 2011, shows that Allchin received $26.67 for 1.5 hours of overtime work, or an effective overtime hourly rate of $17.78. (Doc. No. 48-3 at 69.) This rate is one and a half times the paycheck's indicated hourly rate of $11.85. The paycheck does include an entry for "Gratuity" but Plaintiffs have offered no facts establishing this was a service charge that occurred on the same day that Allchin worked the 1.5 hours of overtime. Similarly, Allchin's only other paycheck including overtime pay shows him receiving one and a half times his hourly rate. And again, Plaintiffs have offered no facts showing that this calculation was incorrect.

Aside from Allchin's paychecks, the only other evidence Plaintiffs have offered of a miscalculation of overtime pay is a passage of Mr. Winarski's deposition. (See Doc. No. 48-1 at 12.) In this passage, Winarski is asked about two exhibits, "Exhibit 15" and "Exhibit 16." (Doc. No. 48-3, Winarski Deposition ln. 89:17-90:13.) Although the preceding portion of the deposition was not included in the record, the premise of the question posed to Winarski is that Allchin worked three, three-hour shifts on one day but was not paid overtime. (See id. ln. 89:3-8.) Notably, however, the two exhibits Winarski was presented with have not been included in the record before the court. And without

---

[1] Two additional paystubs include entries for CAOTPrem, which stands for California Overtime Premium. (Doc. No. 48-3, Winarski Deposition ln. 34:10-11.) Winarski testified that this payment was for "when a person works past midnight, their shift goes into midnight, that there is a premium paid. (Id. ln. 34:13-15.) Plaintiffs have offered no explanation for whether this premium is legally required and, if so, how it was miscalculated.

1   these, it is impossible for the Court to assess the injury.  See Dukes, 564 U.S. at 350
2   ("Rule 23 does not set forth a mere pleading standard.)

3       Furthermore, even if Plaintiffs were able to show that Allchin's overtime pay was
4   miscalculated, they have offered no evidence to show that class members other than
5   Allchin were injured in a common manner.  Plaintiffs seek to certify a class containing at
6   least 2000 individuals.  (Doc. No. 48-3, Winarski Declaration ¶ 2.)  These class members
7   are spread out across numerous venues in California, including stadiums, zoos, golf
8   courses, convention centers, and catering company facilities, and are employed in nearly
9   80 different positions.  (Doc. No. 58-1, Winarski Declaration ¶¶ 2-3, 8.)  Notably,
10  locations differ as to whether workers are unionized and, if so, as to the terms of the
11  separately negotiated collective-bargaining agreement.  (Id. ¶¶ 6-7.)  Yet despite these
12  differences, Plaintiffs offer no evidence of wage miscalculation beyond Allchin's
13  paystubs—let alone a miscalculation common to the class.[2]  There are no representative
14  paystubs, no representative payment histories, and no additional class member
15  declarations.  Without more, the Court cannot say that class members' rights were
16  violated in a common manner.  Dukes, 564 U.S. at 352 ("Without some glue holding the
17  alleged reasons for all those decisions together, it will be impossible to say that
18  examination of all the class members' claims for relief will produce a common answer to
19  the crucial question.").

20      Plaintiff's reliance on the testimony of Winarski does not save the class.  Winarski
21  is Defendant's Vice President of Human Resources and was deposed as a Person Most
22  Knowledgeable.  (See Doc. No. 48-3, Exhibit 1.)  Winarski testified that Defendant's
23  policy for calculating overtime policy was reduced to writing in September 2012, (Doc.
24  No. 48-3, Exhibit 1 ln. 11:14-23), and, although each location calculated overtimes
25  separately, they all followed the policy, (Id. ln. 46:10-16).  Plaintiffs make much of this

---

[2] Plaintiffs do offer a paystub belonging to Ken M Aronovsky, but offer no explanation of who his is, where he worked, or why the paystub shows a miscalculation.

policy, arguing that it supports a finding of commonality.  (See Doc. No. 48-1 at 11-12.)
However, they have identified no error in the policy that would lead to a miscalculation
of overtime pay.  The policy clearly provides for the inclusion of service charge
compensation in employees' overtime pay and Winarski testified that whenever
employee's received service charges, it was included in the overtime calculations as
necessary.  (Doc. No. 48-3, Exhibit 1 ln. 25:4-13.)  Without a connection between the
company-wide policy and the alleged injury to class members, the policy alone cannot
support a finding of commonality.  As the Supreme Court explained in Dukes, class
members "claims must depend upon a common contention."  564 U.S. at 350.  Were
Plaintiffs' contention that the application of Defendants' written policy resulted in a
miscalculation of overtime pay, then certainly this common contention requirement
would be met.  But that does not appear to be Plaintiffs' contention—or at least they have
made no showing of how the policy resulted in the class members' injury.

The Court notes that this analysis of the commonality prerequisite necessarily
overlaps with the merits of Plaintiffs' contentions.  However, such overlap is "a familiar
feature of [class action] litigation" and proper in conducting a "rigorous analysis" of the
Rule 23 requirements.  Dukes, 564 U.S. at 351.

2. Typicality

Typicality requires that "the claims or defense of the representative parties are
typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of
typicality is whether other members have the same or similar injury, whether the action is
based on conduct which is not unique to the named plaintiffs, and whether the other class
members have been injured by the same course of conduct."  Hanon v. Dataproducts
Corp., 976 F.2d 497, 508 (1992) (internal quotation marks omitted); accord Wolin, 617
F.3d at 1175.  As the Supreme Court has noted, "[t]he commonality and typicality
requirements of Rule 23(a) tend to merge" but "[b]oth serve as guideposts for
determining whether . . . class claims are so interrelated that the interests of the class
members will be fairly and adequately protected in their absence."  Falcon, 457 U.S. at

157 n. 13. Because Plaintiffs have offered no evidence of other class members' injuries, they have failed to establish that named plaintiffs are typical.

As the Court previously explained, Plaintiffs have offered almost no evidence showing that named plaintiffs sustained injuries arising from miscalculated overtime pay. More importantly, however, with regards to typicality, Plaintiffs have offered no evidence of how class members, other than named plaintiffs, were injured. As such, the Court is unable to assess "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether the other class members have been injured by the same course of conduct." Hanon, 976 F.2d at 508. And without assurances of these similarities, there is no way to ensure "class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 157 n. 13.

### 3. Predominance

As Plaintiffs seek to certify their class under the third prong of Rule 23(b), they must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013), and tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 594 (1997). Plaintiffs have not met this "more demanding" standard.

Plaintiffs have failed to satisfy the commonality requirement because they have offered no facts showing that class members were injured through a common course of conduct. As such, they necessarily fail to show that those common questions predominate over individual ones. Amchem, 521 U.S. at 624 ("the predominance criterion is far more demanding"). The Court further notes that Plaintiffs have failed to show that "questions affecting only individual members" will not engulf the case.

One issue that threatens to splinter resolution of Plaintiffs' overtime claims is the different collective bargaining agreements governing pay at Defendant's various venues. In his declaration, Winarski stated that Defendant operates seven facilities in California, some of which are unionized and some of which are not. (Doc. No. 58-1 ¶¶ 6, 10.) Unionized facilities each have at least one separately negotiated collective-bargaining agreements, which addresses overtime pay and service charges. (Id. ¶ 6.) Plaintiffs Allchin and Foster only worked at two of the facilities, the San Diego Convention Center ("SDCC") and Qualcomm Stadium ("Qualcomm"). (Id. ¶ 4.) Both SDCC and Qualcomm are unionized, but are governed by separate collective bargaining agreements. (Id. ¶ 7.) Whether an employee is covered by a collective bargaining agreement can have a significant impact on their overtime compensation. See Cal. Lab. Code § 514 ("Section 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if [certain conditions are met].") Yet despite this potentially dispositive issue, Plaintiffs have not addressed its impact on class certification. First, Plaintiffs did not include Allchin or Foster's collective bargaining agreements in the record and do not address their impact on Section 510 of California's Labor Code, which forms the basis of Plaintiffs overtime claims. (See Doc. No. 7, First Amended Complaint ¶¶ 34-39.) Second, even if the SDCC and Qualcomm collective bargaining agreements do not affect Plaintiffs' overtime claims, Plaintiffs have offered no information regarding how other class members' claims are affected by their collective bargaining agreements. Plaintiffs do not identify which other facilities are covered by collective bargaining agreements, nor what the terms of those agreements might be. And without this information, there is no way to know whether common issues will predominate. See Williams v. Boeing Co., 225 F.R.D. 626, 637 (W.D. Wash. 2005) (finding that grouping hourly employees covered by multiple agreements would be unmanageable and declining to certify subclasses because plaintiffs did not provide sufficient information regarding the agreements' coverage). Furthermore, as named plaintiffs only include individuals covered by collective bargaining agreements, there is a possibility that they will fail to

fully protect the interests of employees not covered by one.  See Falcon, 457 U.S. at 157 n. 13.

Plaintiffs argue that the collective bargaining agreements are irrelevant because "Defendants make no evidentiary showing of any applicable collective bargaining agreement, a showing upon which any § 514 analysis necessarily turns."  However, this gets the burden backwards.  "A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]."  Dukes, 564 U.S. at 350.  And this requires "evidentiary proof."  Comcast Corp., 133 S.Ct. at 1432.  Plaintiffs have not provided such proof.  Plaintiffs have not identified which of Defendant's facilities are covered by collective bargaining agreements nor whether those agreements affect overtime compensation.  In sum, Plaintiffs' evidence does not establish that differences amongst the class members' collective bargaining agreement are predominated by common questions.  See Boeing Co., 225 F.R.D. at 637.

## B. Inaccurate Pay Statement Class

Plaintiffs' proposed Inaccurate Pay Statement Class includes "all current and former non-exempt employees of Defendants within the State of California who . . . were not provided with an accurate, itemized pay statement reflecting (1) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked by the employee at each hourly rate, or (2) reflecting the name and address of the legal entity that is the employer."  (Doc. No. 48 at 2.)  This class will allege that Defendant violated California Labor Code § 226 by providing employees with inaccurate pay statements.  However, because Plaintiffs have not offered facts demonstrating that common questions predominate, the Court cannot certify the class.  See Sali v. Universal Health Servs. of Ranch Springs, Inc., 2015 WL 12656937, *9 (June 3, 2015 C.D. Cal.) (denying certification of wage statement class premised on the fact that defendants used a doing-business-as name on their paystubs because injury was "not amenable to common systems of proof").

///

13

1          1. Predmoniance

To establish the requisite element of predominance, Plaintiffs must show that "questions of law or fact common to class member predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This inquiry subsumes Rule 23(a)'s commonality analysis and is "even more demanding." Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013). Based on the evidence before the Court, Plaintiffs' analysis of § 226 involves various individualized issues that are not amendable to a class action under Rule 23(b)(3).

To prove a violation of § 226, Plaintiffs must show "(1) a violation of the statute; (2) the violation was knowing and intentional; and (3) an injury resulted from the violation." Achal v. Gate Gourmet, Inc., 114 F.Supp.3d 781, 810 (N.D. Cal. 2015). Each of these elements is necessary, and a failure of proof is fatal. E.g., Elliot v. Spherion Pac. Work, LLC, 572 F.Supp.2d 1169, 1180 (C.D. Cal. 2008) (holding that plaintiff could not recover under § 226 because she did not suffer injury resulting from defendant's "use of a slightly-truncated name"). Determining whether class members were injured by Defendant's alleged violations will require an individualized analysis at odds with the principles of a class action. Sali, 2015 WL 12656937, *9 ("The Court agrees that demonstrating that each class member was damaged by the claimed inaccuracy in the wage statement is a critical individualized issue in determining liability that is not amenable to common systems of proof."); see also Delgado v. New Albertson's, Inc., 2009 WL 10670628, *10 (Dec. 15, 2009 C.D. Cal.) ("Finding injury for each class member would be a particularly daunting task and would require an individualized determination for each class member."). Similarly, based on the evidence before the Court, the Court cannot say that assessing whether alleged violations were knowing and intentional is subject to common proof.

///

///

///

### i. Injury

To establish a violation of California Labor Code § 226, an employee must establish they suffered an injury resulting from the employer's inaccurate pay stub. Cal. Lab. Code. § 226 ("An employee *suffering injury* as a result of a knowing and intentional failure by an employer . . . is entitled to recover . . . ."); Elliot v. Spherion Pac. Work, LLC, 572 F.Supp.2d 1169, 1180 (C.D. Cal. 2008) (holding that plaintiff could not recover under § 226 because she did not suffer injury resulting from defendant's "use of a slightly-truncated name"). The injury threshold is not high, see Jaimez v. DAIOHS USA, Inc., 181 Cal.App.4th 1286, 1306 (2010) ("a very modest showing will suffice"), but a failure to show injury is fatal. Where plaintiffs seek to certify a class-wide claim under § 226, they must show that a finding of injury is "amenable to common systems of proof." Sali, 2015 WL 12656937 at * 9. If not, the class fails. Id.; see also Dukes, 564 U.S. at 350 ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution"). Various courts have denied class certification on the grounds that determination of injury requires individualized analysis. Sali, 2015 WL 12656937, *9 ("The Court agrees that demonstrating that each class member was damaged by the claimed inaccuracy in the wage statement is a critical individualized issue in determining liability that is not amenable to common systems of proof."); see also Delgado, 2009 WL 10670628, *10 (Dec. 15, 2009 C.D. Cal.) ("Finding injury for each class member would be a particularly daunting task and would require an individualized determination for each class member."). The Court finds this case is no different.

In their declarations, Plaintiffs state that they were confused by their paystubs. For example, David Foster declared that he "did not have an understanding of what amount of the service charge would be included in [his] check" and "was also never able to understand from looking at my pay check stubs how Centerplate determined how much service charge I was owed or for what shifts I was being paid service charges." (Doc. No. 48-5, Foster Declaration ¶ 5.) Similarly, Mark Allchin declared that he "never had

3:16-cv-00488-H-KSC

an understanding of hat amount of the service charge would be included in [his] check" and "was also never able to understand from looking at my pay check stubs how Centerplate determined how much service charge I was owed of for what shifts I was being paid service charge." (Doc. No. 48-4, Allchin Declaration ¶ 3.) Some courts have held that employee confusion is sufficient to show an injury. See e.g., Delgado, 2009 WL 10670628, *3 (citing Elliot, 572 F.Supp.2d at 1181.) However, even if Foster and Allchin's confusion is enough to establish injury to them personally, Plaintiffs offer no evidence that such confusion is uniform throughout the proposed class. Indeed, Plaintiffs offer no evidence of what other class members thought whatsoever. The only class-member evidence of understanding was provided by Defendant through a declaration of Wendy Marquez, who stated "[w]e get paystubs that show all of our hours worked" and also claimed she "never noticed any discrepancy between the amount I worked and the time I was pad." (Doc. No. 58-11 at 11, Declaration of Wendy Marquez ¶ 11.) Ms. Marquez made no mention of being confused by her paystubs. (Id.) Thus, were the Court to rely on Plaintiffs' confusion as the basis for their injury, there is no evidence this was uniform throughout the class and assessing injury would require individualized inquiries, not of the type contemplated by Rule 23 class actions. See Delgado, 2009 WL 10670628, *10 (Dec. 15, 2009 C.D. Cal.) ("Finding injury for each class member would be a particularly daunting task and would require an individualized determination for each class member.").

Plaintiffs also argue they have met certain statutory requirements by which they are "deemed injured." See Cal. Lab. Code § 226(2)(B). These provisions provide that:

(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of the items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement along one or more of the following:

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

(ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregade deductions consistent with the requirements of item (4) of subdivision (a).

(iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

(iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number."

Cal. Lab. Code § 226(e)(2)(B). Plaintiffs have not established a class-wide injury under any of these prongs.

Plaintiffs argue that class members were injured because Defendant's "pay statements do not reflect all applicable hourly rates in effect during the pay period and the corresponding number of hours worked by the employee at each hourly rate." Doc. No. 48-1 at 14.) Recently in Apodaca v. Costco Wholesale Corp., 675 Fed.Appx. 663 (9th Cir. 2017), the Ninth Circuit held that an employee's hourly rate could be "promptly and easily determine[d] from the wage statement alone" by "dividing the amount paid by the hours worked." Id. at 665. Because employer's paystub included an amount paid and the number of hours worked, the Court found they had satisfied the hourly rates requirement of § 226(a). Id. As such, the Ninth Circuit affirmed the district court's denial of certification for claims based on § 226. Id. The Apodaca holding is directly on point here. Defendant's paystubs include the number of hours worked and the total amount of

compensation for those hours.  (E.g., Doc. No. 48-4, Allchin Declaration ¶ 3 ("The pay check stub includes an "Overtime Rate" of $8.10 per hour, and a payment totaling $6.08 for 0.5 hours of overtime."))  Thus, at a minimum, an employee could promptly and easily determine their applicable hourly rate by "dividing the amount paid by the hours worked."  Apodaca, 675 Fed.Appx. at 665; see Reinhardt v. Gemini Motor Transport, 879 F.Supp.2d 1138, 1142 (E.D. Cal.) ("if a claimant injury is based merely upon the plaintiff having to perform 'simple math' with the information already in his possession, then there is no cognizable injury.")

Plaintiffs also argue that class members were injured because class members' paystubs included an inaccurate employer name and address.  (Doc. No. 48-1 at 11.)  The Court first notes that there is no evidence in the record that the address appearing on Plaintiffs' paystubs is inaccurate.  In his deposition, Winarski testified that the address on Allchin's September 21, 2011 paystub was the headquarters of Volume Services, Inc. at the time.  (Doc. No. 48-3, Winarski Deposition ln. 21:5-8; 20-25.)  And Plaintiffs have offered no other evidence that Defendant's address was incorrect.  As such, Plaintiffs cannot argue injury arising from an inaccurate address.

Address aside, Plaintiffs' argue class members' paystubs are inaccurate because Defendant used its doing-business-as ("dba") name of Centerplate Inc., rather than the name Volume Service, Inc.  (Doc. No. 48-3 at 14.)  California Labor Code § 226 is silent as to whether a dba name is sufficient.  Id. (only requiring "name and address of the legal entity").  However, courts addressing the question have refused to find a per se violation when companies deviate from using their full legal name.  E.g., Elliot v. Spherion Pac. Work, LLC, 572 F.Supp.2d 1169, 1179 (C.D. Cal. 2008) (finding no violation of § 226 where defendant truncated its name on the wage statements); Delgado, 2009 WL 10670628, *4 (finding no violation of § 226 where defendant included the name "Albertson's, a SUPERVALU Company" when Albertson's was its dba name); York v. Starbucks Corp., 2009 WL 8617536, *8 (Dec. 3, 2009 C.D. Cal.) (finding no violation of § 226 where defendant used its dba name "Starbucks Coffee Company", rather than its

18

corporate name). When interpreting California's labor statutes, "words are to be given their plain and commonsense meaning." Apodaca, 675 Fed.Appx. at 665 (quoting Murphy, 40 Cal.4th at 1103). And as the Court in Elliot noted, § 226 does not require "an employer to state its 'complete' or 'registered' name" but "only requires the employer state its 'name and address.'" 572 F.Supp.2d at 1180. In light of federal court decisions, and in the absence of California state court cases on point, the Court cannot find a per se injury based on Defendants' use of "Centerplate, Inc." as its name. This was the name used throughout its operations in California and was accompanied by the correct address. And to the extent that Plaintiffs can allege some specific injury resulting from this aspect of the paystub, they have offered no evidence of a class-wide uniformity.

Finally, Plaintiffs argue that Defendant's pay statements are inaccurate because employee's compensation stemming from services charges is not included in the hourly rates. (Doc. No. 48-1 at 14.) Plaintiffs, however, do not cite any legal support for their claim that "applicable hourly rates" should include the service charges and the Court cannot find any. And in any event, Plaintiffs have not established that showing an employee's service charges were not included in their hourly rate is amenable to class proof. Winarski testified that how service charges were included in rates differed from location to location. (Doc. No. 58-10; Winarski Deposition ln. 22:20-23:3, 24:6-17.) This was in part because the locations various collective bargaining agreements could affect the calculations. (Id.) In light of these location-by-location differences, any analysis of whether Defendant's pay statements were inaccurate necessarily includes an individualized analysis.[3] And Plaintiffs have offered no evidence to the contrary. The

---

[3] It is possible that a common proof could be established on a location-by-location basis using subclasses. However, Plaintiffs offer insufficient evidence to support the certification of subclasses based on location—and, in any event, only have representatives from two of the seven locations. See Boeing Co., 225 F.R.D. 626, 637 (W.D. Wash. 2005) (declining to certify subclasses because plaintiffs did not provide sufficient information regarding the agreements' coverage) ; see also Upper Deck Co., 183 F.R.D. at 680-81 (party seeking certification must have "sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak.").

only evidence of paystubs before the Court belong to Allchin and Foster. As the Court previously explained, Plaintiffs have failed to provide facts showing these paystubs are inaccurate as to the inclusion of service charges in overtime pay—and much less that they establish some class-wide injury.

For the foregoing reasons, the Court agrees with other district courts finding that a showing of class-wide injury would require individualized analysis inconsistent with Rule 23. See Sali, 2015 WL 12656937, *9 ("demonstrating that each class member was damaged by the claimed inaccuracy in the wage statement is a critical individualized issue in determining liability that is not amendable to common systems of proof"); Delgado, 2009 WL 10670628, *10 (Dec. 15, 2009 C.D. Cal.) ("Finding injury for each class member would be a particularly daunting task and would require an individualized determination for each class member.").

### ii. Knowing and Intentional Acts

Plaintiffs have also failed to show that proving that the alleged inaccurate statements were made knowingly and intentionally by Defendant is subject to common proof. To prove a violation of § 226, Plaintiffs must show that any violations were made knowingly and intentionally. Achal, 114 F.Supp.3d at 810. Section 226 defines "knowing and intentional" as follows:

> (3) For purposes of this subdivision, a "knowing and intentional failure" does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake. In reviewing for compliance with this section, the factfinder may consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section."

Cal. Lab. Code § 226(e)(3). Because class members' paystubs are the product of multiple policies, procedures, and practices that differ from location to location—almost none of which have been addressed by Plaintiffs—the Court finds that common questions do not predominate this inquiry.

Winarski testified that employees' paystubs are a result of multiple policies, procedures, and practices that differ from location to location. For example, Winarski testified that the calculation of service charges, their amount and distribution, differed from location to location and were heavily impacted by the various collective bargaining agreements. (Doc. No. 48-3, Winarski Deposition ln. 31:19-32:6.) Furthermore, payroll is not handled centrally by Defendant at its headquarters but, rather, each location prepares their own payroll internally. (Id. ln. 44:11-23.) Notably, overtime rates were calculated separately by individuals at each location, based on the location-specific constraints. (Id. ln. 56:8-12.) These site-specific differences complicate any common proof of whether misstatements were knowing and intentional. For example, to the extent Plaintiffs seek to show that Defendant improperly reported a class members' overtime compensation, Plaintiffs will need to identify the location where the rate was calculated, who made the calculation, what polices and collective bargaining agreements were in place, and then make a factual showing that whoever made the calculation, or established the policy mandating the calculation, acted in way to knowingly and intentionally misstate it. This is not the type of common proof contemplated by Rule 23. Amchem, 521 U.S. at 622-24.[4]

### C. UCL Class

Because the Court denies certification of the Overtime Class, the Late Pay Subclass, and the Inaccurate Pay Statement Class, the Court also denies certification of the derivative UCL Class. Plaintiffs' § Bus. & Prof. Code § 17200 claims are all derivative of overtime and inaccurate pay statements claims. As Plaintiffs have failed to show class certification is proper for the other classes, they similarly fail to support the UCL Class.

---

[4] As previously noted, this type of proof might be susceptible to common proof via subclass, but Plaintiffs have not provided evidence to support a certification of subclasses based on location. See Boeing Co., 225 F.R.D. at 637; see also Upper Deck Co., 183 F.R.D. at 680-81 (party seeking certification must have "sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak").

## **CONCLUSION**

For the foregoing reasons, the Court denies Plaintiffs' motion for class certification. Plaintiffs have not produced sufficient evidence to show that they have met the requirements for a class action under Rule 23. Pursuant to the Court's scheduling order, the parties were to complete discovery by January 12, 2017. (Doc. No. 37.) As this date has already passed, the record is fully complete. As such, the Court denies the motion for class certification.

**IT IS SO ORDERED.**

DATED: August 4, 2017

Hon. Marilyn L. Huff
United States District Judge

3:16-cv-00488-H-KSC